Case number 18-5137, America's Collectibles Network, Inc. v. International Business Machines Corporation, et al. Oral argument not to exceed 15 minutes per side. Pierre Bergeron for the appellant. You may proceed. Good morning, Your Honors. May it please the Court, I'd like to reserve three minutes for rebuttal. Fine. Your Honors, with a mere two-sentence analysis, the District Court wiped away $26 million of the jury's verdict. And it did so based on reasoning that Sterling does not now defend. Below, Sterling argued for a unified series of damages and said all three awards were identical. But now it's forced to concede the difference between benefit of bargain and reliance damages. Sterling bears the burden of establishing duplication here. But it offers the Court nothing beyond speculation to satisfy that burden. Our job in this case is to interpret what the jury meant when it wrote down the amount being the same amount. How much was it? $13 million for each cause of action. On each of three jury questions that the trial judge put to the jury. But what I don't understand is why would the jury on three separate questions, if they were separate, if what they had in mind was separate damages for separate problems, why would they have exactly the same amount each time? It doesn't make sense to me. That could be what the jury had in mind. And it makes more sense to think they just wrote down the same thing because they were under the impression from the instructions that that's what the Court intended. Well, Your Honor, I don't think that that's actually the case because they submitted a note and they said, do we add it all together or do we put the same amount on each line? So it showed that that's what they were intending to do is put the same separate amount on each line. And to your question about, well, how did they get $13 million for each one, ultimately it does not matter because Sterling does not contest the fact that there was sufficient evidence for each cause of action to support at least $13 million in damages. And what the cases have held in this context, the duplication of damages context, is just the fact that there happened to be the same amount doesn't satisfy the burden. They have to show something beyond speculation, the exact same speculation that you're talking about, which is, well, how did the jury arrive at this? And when we go and we look at what happened below, Sterling submitted a number of briefs, scores of pages, and never identified any evidence to actually substantiate the duplication. And the District Court compounded the error by not explaining how the Court found duplication. The Court evidently thought from its ruling in the case that there was only one $13 million to be awarded, and that's what the jury's verdict and the different putting it down three times, that's what was intended and that's the way it interpreted what the jury did, right? That's correct, Your Honor. And that's wrong under the basic premise that we have to interpret the jury verdict in a light most favorable to the prevailing party, which is the plaintiff. The District Court effectively reversed that and said, we're going to construe this in a light most favorable to the defendant. Are you claiming then that the $13 million on each of the two torts was awarded for different damages? It's obviously awarded for different theories, but the damages were different? Yes, Your Honor. It seems ironic then that it would be 13-13-13. And, Your Honor, I'm not going to quibble with the irony there. But my point, there were two separate causes of action, and what we don't hear from in Sterling's brief is the difference between the fraud and the negligent misrepresentation. So how can we say there's 13 on the fraud and 13 on the negligent misrepresentation? What are the different amounts that cause you to say that makes sense? Sure, Your Honor. So our expert presented a number of different categories of damages, including $16 million related to the loss functionality and about $27 million related to delay damages, based on Sterling promising something and then not being able to effectuate that. And so what the jury could well have done is awarded the $13 million for the fraud because the fraud is limited to inducement to enter into the contract based on the lost functionality. In other words, we did not get what we were promised that we were supposed to get. But for the negligent, as a matter of logic, how do you come out with it? There's nothing to support the idea that the jury decided the case in that way. It's just pure speculation. And, Judge Merritt, that's part of my point. Part of my point is they bear the burden of establishing that there is duplication, and they had the means at their disposal to answer exactly this question, and they could have done it by requesting that the jury be polled or clarify their verdict, if they had any doubt about it, while the jury was in panel. And that's what the number of circuit cases we cite in our brief establish and show that the reason that we have this process is so that you, as the appellate court, have the means at your disposal to evaluate what the jury did and make the call as to whether it duplicated the damages. When they don't, I'm sorry, Judge Moore. So if the first one, the fraud, loss of functionality, not get what they paid for, what is the negligent misrepresentation? I'm sorry. $13 million. Yes, so, Your Honor, with respect to that, there's the $27 million related to the delay and the disruption. So the negligent misrepresentation is broader than the fraud and covers anything in the business relationship. So part of the harm here was not only the lost functionality, but was Sterling stringing us along and saying, don't worry, don't worry, it's all going to be fine, and keeping us engaged with them as they dug the hole deeper and deeper. And then there's the $13 million on the breach of contract. So what is that that's different from the other? And so that is fundamentally different. And what the $13 million there, and Sterling explains in its briefs below how it calculated that, and says these are the reliance damages. For that, there is an aspect to that. Now, I want to be clear on the difference between duplication of damages and election of remedies. Election of remedies applies between the tort and the contract. And for that, you have to show true repugnancy between the two. So there is an aspect to the breach of contract that includes the amount we paid to them. That would be inconsistent with the benefit of the bargain damages on the tort. However, there is also an aspect, a $6.7 million, and we explain this in our brief and they don't respond to it, that is not inconsistent. And here's why. Because in a normal breach of contract, you say we're at this point and we're going to go to this point. And you breach and you don't get there. And so you get made whole. But what happened here was what our witnesses called net negative. We went backwards rather than forwards. And so these damages, the $6.7 million, are to bring us back to the starting point. It's not expenditures in furtherance of the contractual relationship. And so because of the contractual damage cap of $5.5 million, all we have to do to sustain the contract award is to come up with something above $5.5 million as not being inconsistent. So because you agree that it was wrong for the jury to award you $13 on the breach of contract, it should have only been the $5.5? Well, it was not wrong for the jury because the jury was not instructed on the $5.5. So the jury was not aware of that. There was nothing wrong about it, but what I'm saying is we can only sustain $5.5 and that's all we're trying to obtain on the breach of contract. But the district court never analyzed the repugnance question. And indeed, it conflated the issue between duplication of damages and election of remedies. And by saying they're all the same, obviously the jury verdict, where the jury came back and awarded reliance damages, not benefit of the bargain damages, is fundamentally inconsistent with what the jury held. And, Your Honors, with respect to the question of prejudgment interest, the district court did not apply the Tennessee standard for prejudgment interest. It awarded reflexively the federal post-judgment standard of 1.2%. And that is exactly what this court has held you cannot do in Shoemaker. And I think to further illustrate the point, Sterling Below presented, and this is at page 302, 403, and 404 in page ID, its expert affidavit detailing the potential interest rates. And with every incentive to lowball it, they came up with 26 different interest rates. All of those were above what the district court awarded. Indeed, if you averaged them, you would get over three times what the district court awarded. The district court simply made no finding that the actual interest being awarded, as Tennessee law requires, will actually fully compensate the plaintiff. Remember, we have been victimized here by a wide-reaching, longstanding fraud. In fact, it includes at least a dozen contractual breaches and 32 different misrepresentations. And Judge Moore, getting back to your point, some of those misrepresentations could have been fraudulent inducement, and some could have been negligent misrepresentation. So on the prejudgment interest, if the district court didn't explain his reasoning, the remedy would be to send it back for him to explain? That's correct, Your Honor. I mean, obviously this court in its prerogative could enter an interest rate, but we believe that probably the more prudent course on that would be to remand with instructions. Why wouldn't, given that there is a lot of controversy as to what the 13, 13, 13 million means, why wouldn't the preferential approach be to vacate and remand and order a new trial on the damages? I appreciate you asking that, Judge Moore. I want to be clear on that. We do not want a new trial. This litigation has gone on. We'd rather have three 13 million. Well, no, no, Your Honor. We'd rather have 13 only than a new trial. Yes, that's correct, Your Honor. If you ruled against us, we would rather have that than go back to a new trial. Part of the reason is this has been going on 10 years, and we all want to move on with our life. But the reason that we don't think there needs to be a new trial is because the jury spelled out its answers, and they bear the burden of showing those answers are not right or not defensible. And they have to do something to substantiate that burden. And that's where we get back to the whole debate about speculation. But why wouldn't the jury have come up with 12, 11, and 10 instead of 13, 13, 13? It doesn't make sense for the jury to begin to specify different things comprising each of these three. And I think that this looks like a compromise verdict. I mean, that happens all the time. But couldn't it be that the jury thought 13 is a good number, we're going to put it down for each one? Well, no. And then that's it, 13. No, no, no. But this is where the jury's note, the question, comes into play. Because the jury said there are two mutually exclusive options. Do we add everything together, or do we put the same amount down on each line? And the judge says, look at my instructions. Look at my instructions. Right. Right. So, Your Honor, for all those reasons, we were saying. If you don't want a new trial, then we've got to interpret what it means to put the same number down three times. You do. And I think you've got the guidance in the cases that we have provided that show what you do in the standard. I'm aware that the trial judge thought, the way he interpreted the case, that the jury intended one 13 million, right? That's correct. But he never explains why, which is part of the problem. Yes, Judge Scott. If I may. Absolutely. You had various theories, but they can be lumped under either tort or contract. Sure. And what troubles me, which isn't discussed all that much in the briefs and whatnot, is jury instruction 26. And that's entitled tort damages. And I looked at the instructions and whatnot. And this is the instruction that applies to tort damages across the board. And it says, if you find that JTV is entitled to a verdict against Sterling on a claim of fraudulent misrepresentation, inducement, promissory fraud, or negligent misrepresentation, you must then award damages in amount that will reasonably compensate JTV for losses suffered by JTV that were legally caused for the result. You will award JTV the benefit of the bargain. The benefit of the bargain is the difference between the value of what JTV would have received if the misrepresentation had been true and the actual value of JTV received. In determining the benefit of the bargain, you may consider so forth and so on. To me, this suggests, and the use of misrepresentation as a theory and then in definition of the benefit of the bargain is confusing. But apart from that, to me, this suggests that the jury was to bring back one verdict as to tort damage. One. One number. And, Your Honor, I appreciate that, but I think that if you look at the verdict form specifically. I have looked at the verdict form. Right. It says what was proximately caused by the fraud and what was proximately caused by the negligent misrepresentation. And this is where the difference between those two claims, fraud being limited to just entering into the contract and negligent misrepresentation being far broader, there is a difference there. And part of this comes down to are we going to give the benefit of the doubt to the jury and to effectuate the jury's verdict or are we going to second guess that with something beyond speculation? Thank you. Okay. Thank you. If you have this case on a contingent fee, I take it. I choose not to comment on that, Your Honor. Thank you. May it please the Court. April Ferris for Appalese. This Court should affirm the judgment on election of remedies and prejudgment interest. Turning first to the election, Hickson holds that it is incumbent on a trial court to review a jury's damage awards for duplicative and overlapping damages. The trial court followed Hickson to the letter. It examined the evidence and the awards and it limited JTV to only one recovery for the Sterling Project failure. Today, the question for this court is whether the trial court's finding that the damages were overlapping and duplicative was clearly erroneous. JTV has not come close to proving clear error. Instead, JTV is complaining about the results of its own calculated strategy that failed to achieve its desired result. Four points today on why this court should affirm. And the first is the standard of review. JTV's own authorities established that this court defers to a trial court's finding that damages are duplicative unless that finding is clearly erroneous. The clear error standard gives significant deference to the trial court. As the Supreme Court has explained, it puts a serious thumb on the scale in favor of the trial court's ruling. When this court looks to whether clear error exists, the only question that this court is asking is whether the district court adopted a reasonable view of the evidence. Here, the most that JTV has proffered is that it is plausible or possible that the jury awards were not duplicative. This does not come close to approaching the clear error standard, so the judgment here should be affirmed. Well, if the evidence at trial indicated that there were damages, say, of approximately 50 million, why wouldn't it be appropriate, then, to say what the jury meant was 13 plus 13 plus 13 equals 39? Two reasons, Your Honor. And the first reason is that the jury did not find that JTV was entitled to that amount of damage. If JTV had wanted to quibble with what the jury actually awarded on benefit of the bargain, then JTV would have borne the burden of establishing that the jury's finding was not supported by the evidence. But the jury did say 13 on the one tort count, 13 on the other, and 13 on the contract. So I don't know how you can say that the jury didn't say it was a total of 39. And that brings me to my second answer, Your Honor. And here, that's because whenever a court looks at whether damages are duplicative and overlapping, it always, always has to start with the jury instructions and the jury verdict. And here, the dispositive point in this case is Instruction 28. Instruction 28 was specifically requested by JTV. And I'll read that instruction to you. It says, Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. And this instruction does two very important things. The first thing it does is it makes the trial court the sole fact finder on two very important questions. Now, the first question is what JTV's total recovery should be. And the second question is whether the jury's damages are duplicative or overlapping. But Instruction 28 also does something else that is just as important. It prohibits the jury from attempting to answer these questions or from even thinking about them when it goes to find the benefit of the bargain on tort and when it goes to find reliance damages on breach of contract. Now, this instruction refutes all of JTV's theories of the case. Well, in that regard, really, you can say the jury brought back 39, but the judge told them that he would determine the actual amount. So it's sort of you're sort of spinning your wheels, arguing too long that it couldn't be 39 because the judge had the right to declare them duplicative, and he did. That's correct. So what the judge is doing is the judge is taking a fresh look at the evidence, and the judge is the finder of fact on the question of whether damages are duplicative. And so what the judge is doing is he's looking at all of the evidence that has come in at trial. He's listened to JTV's arguments. He's listened to five weeks of evidence. And the judge, not the jury, is the one that's making the determination of whether damages are duplicative. And he got that answer right. JTV can't show any clear error in the trial court's finding that damages are duplicative and overlapping because no other result was even possible given how JTV tried its case. Here, once again, we have to remember. So I'm sorry to be getting back to this, but you're saying then that the argument that your opponent made that there were different things that comprised the damages on the one tort versus the other tort, the fraud versus the negligent misrepresentation, that that was not correct, you're saying, and that the district judge found it was not correct, that it was all one set of damages that at maximum was a total of $13 million? So JTV hasn't challenged the sufficiency of the evidence. All that the trial court found was whether the damages were duplicative. And the court found unquestionably that they were duplicative and overlapping. And that decision was correct based on how JTV tried its case. And also JTV brings up this jury question. And you have to listen to what JTV tells the trial court. As soon as the jury comes back with a jury question, the very first words out of JTV's mouth are, have the jury read what's in Instruction 28. So it wants the jury to make full damage findings on each and every question without trying to discount for duplication. And JTV has a very good reason for that. And that's because with an instruction like this, if JTV were to lose its fraud claim on appeal, then JTV would still have its recovery intact. And that also brings me to another point on how we know that the court didn't intend to award 39. If you look at the contract findings, the jury puts a zero in the question of whether the award includes any lost profits. And here, that 26 million figure that JTV talks about, this is lost profits from other things that JTV would have liked to have been doing if the Sterling Project wasn't taking up its time. These were speculative damages from the beginning. They have nothing to do with JTV's software. And we know that the jury ultimately did not award any of those damages. You had a negotiated amount on the contract matter, 5 million and something. Wasn't that in the contract? Yes. So there's a contractual cap. Just as a curiosity, if the district court is sustained, do they get the 13 million plus the 5 plus interest? I'm sorry, Your Honor. Do they get the 13 million plus the 5? If this court were to reverse and institute and stack them. No, if they were to affirm the district court. Oh, no. No. There would still be limited to one. The cap in the contract thing just is merged into all of it. Well, what happens is on an election of remedies, JTV would be entitled to choose its largest recovery under any theory for a single injury. And here, the single injury is the project failure. And so here, the trial court actually told JTV to pick a theory. JTV refused. So if the jury had brought back 4 million, they could take the 5 under election of remedies. Yes. Yes. So they're limited to only one theory. But that brings me to why the decision here in this case is correct. And we know that that decision is correct because of how JTV tried its case. So JTV is asking this court to stack both tort findings and the contract finding. I'll take those in two parts. We know that the tort damages are duplicative for two reasons. And the most obvious reason is because JTV told the jury that they were. When it's going through its closing argument and it's telling the jury to put in 54, 54, 54, 54 in every damage blink, JTV says that these are the same benefit of the bargain. And that is fully, fully consistent with how JTV tried its case. At the beginning, you can look at docket 750, which is the pretrial order. JTV's theory is that Sterling committed various misconduct consisting of negligence, misrepresentations, fraudulent misrepresentations, and contract breaches, but this all combined to cause the project failure. And then JTV asked for damages for this unitary project failure. Again, at trial, JTV employed the same shotgun strategy. It never once in front of the jury identified a single representation as fraudulent but not negligent or negligent but not fraudulent. It never identified so much as one item of damage as attributable to a misrepresentation that was negligent but not fraudulent or vice versa. And then came the jury charge discussions, and here Sterling did everything in its power to try to get more specificity from JTV. Sterling requested that the jury find liability as to individual misrepresentations and identify whether these were fraudulent or negligent or both. And JTV refused, totally refused, and the trial court overruled Sterling's objection. And so at the end of the day, all that JTV has is the project failure, and it has two categories of damages from that project failure, which are benefit of the bargain damages and out-of-pocket damages. And this is the way that JTV decided to try its case, and that has consequences. In Tompkins v. Sear, this is an opinion out of the Fifth Circuit, the Fifth Circuit found duplicative damages where, just as in this case, plaintiff's counsel made no attempt whatsoever to distinguish between the harm resulting from the two torts. And given the presentation of the evidence, it is extremely unlikely that the trial court could have separated harm arising from the negligent misrepresentation and the fraudulent inducement. Again, when it came to the jury charge, Sterling even requested that the jury find which contracts, which of these eight contracts were fraudulently induced, so that you could possibly know which damages go with what. And what JTV said is very telling. This is on Record 793, page 26153. JTV says, because of the nature of the Sterling implementation project, the jury should be allowed to consider all the agreements and Sterling's actions throughout the project together. This was always one injury. This was always the same project failure, and the trial court got it exactly right. But why couldn't we say there's at least a substantial ambiguity as to whether, as you pointed out, they had a unitary project failure, and they said that there was $54 million in damages. Why couldn't this be the jury's effort to come up with a grand total of $39 million, 13 plus 13 plus 13, as opposed to simply 13? So that at least we should remand for a new trial on damages. Well, here, to do that, you would have to assume that the jury disregarded its instructions. And here, the first sentence, do not increase or reduce the amount in one answer, because of your answer to any other question, that prohibits the jury from allocating one total sum and attempting to split it between three theories. This instruction 28 is what sets this case apart from all of JTV's cases. There was never an instruction like this in any of JTV's cases. But beyond that, one reason that we can't remand just for a trial on damages is because we don't know what it is that Sterling actually did wrong. Here in the pretrial order, there were 32 misrepresentations. JTV never identifies which one is negligent, which one is fraudulent, never lets the jury find what provision of what contract was actually breached. So we don't know what the jury found at the end of the day. All that we know is the jury awarded damages for the project failure. And so you would have to send it back on a new trial on everything just to be able to find out what the damages are, if we assume that there's something other than unitary here. And now the tort contract damages. The only reason is opposing counsel doesn't want a new trial. They do not want a new trial and neither do we, Your Honor. You do not want a new trial. We do not want a new trial. We would like a deferral. Nobody wants a new trial. Nobody wants a new trial. Hopefully we've given you enough doubt as to whether either of you is going to win and you would settle this. Yes. But here the court was also correct in finding that the tort and contract damages were duplicative and overlapping. Again, JTV has not shown any clear error in this finding. JTV admits in its brief that you can't get both contract negating and contract affirming damages. And so when Sterling moved for summary judgment on election remedies in the trial court, JTV said, look, we're not asking for both rescission damages and tort damages. In fact, JTV says, quote, as has been the case all along, JTV seeks rescission or fraud damages in the alternative, a choice that well-settled Tennessee law leaves open to JTV up until the minute that the jury returns its verdict. Here JTV has simply changed its mind. It told the trial court one thing. It's telling this court something else. It points to the $6.7 million figure, but that is still what JTV spent to try to get the benefits of the bargain. We know that this is a rescission measure of damages. You can't get both contract negating and contract affirming damages. So the prejudgment interest, you have just a couple minutes left. Why shouldn't we remand for a further explanation given the small amount of interest rate selected by the district judge? Could I make one other quick point on the damages? We're also happy to stand on a brief on prejudgment interest, but if I may have a minute. There's also a really logical reason that it's 13-13-13. JTV said its two tort claims are the same. These are all services contracts. Whenever you're engaging in a contract for services, what you spend is often what you expect to get. So if I hire someone for $30 an hour to paint my fence for two hours, the benefit that I'm expecting to get is $60 worth of services. So that's a totally logical explanation. Again, it's JTV's burden to show that there was no reasonable basis for what the trial court found. This court should affirm on prejudgment interest because equity is a two-way street. JTV hasn't shown that there is a manifest and palpable abuse of discretion. There was significant delay by both JTV and the trial court. The trial court properly factored this into its consideration, and there was no abuse of discretion. Thank you for your argument. Your Honors, JTV, I'm sorry, Sterling says it did everything in its power to avoid this type of scenario. Well, there's two things that are most obvious that it did not do. One is it did not request an instruction to say don't duplicate damages. That's what the case hall recognizes that a party in their position should do if they're concerned about this. Secondly, it did not take any steps to ask the jury about what it meant and to seek clarification. I think the ramifications here, if this court affirms, for we have a jury verdict, there are multiple causes of action, the incentive it gives to the defendants is to sit back, not do either of those things, and say, well, we don't really know what the jury did, so let's have satellite litigation to figure this out, and we get to chip away at that jury verdict, and we might get a windfall. That's not how the system is designed to work. They bear the burden of this. That's what this court said in black. They bear the burden of showing duplication, and they have to come forward with something beyond speculation. And there is the amount. I grant you that, but that's what the courts have said, including this court and Johnson have said. Just because the amount's the same, that doesn't sustain their burden of showing duplication, as long as the evidence can support an award of that amount. And that's the key distinction here. The evidence here can support the awards that the jury entered. The court below and this court has got the responsibility to interpret what the jury intended by doing it this way, right? It's up to the court and then the appellate court. But that's the whole purpose of why you would ask the jury for clarification if you as the defendant say, we think there's duplication. Then you provide a record on which you can evaluate, rather than this metaphysical debate we've all been having about what was in the jury's mind. There's a reason why they have to ask that question at that point in time, rather than after the fact, call the question. And I think the other real difference here, especially with this court's decision in Hickson, is this is not a single unitary harm. As I said, there were a dozen contractual breaches, 32 misrepresentations over a multi-year period. And every misrepresentation that Sterling made dug us deeper and deeper in the hole and caused more and more damages along the path. And that's why this is not a single unitary harm. There was a multitude of harms, which takes it out of the realm of your typical duplication of damages. And finally, with respect to election remedies, I think the distinction that got lost in Sterling's argument is they have to show true repugnance between the contract award and the tort award. Leave aside the duplication point. They have to show that. And the jury specifically said they are not awarding benefit of the bargain damages in their contractual award. They said they're awarding reliance damages. So we know from the jury's verdict, if we know anything, it's that the jury awarded benefit of the bargain on the tort but reliance damages for the breach of contract. Those are different. And in order for there to be a finding of repugnance, the court has to explain how it found that, which the district court never did. So, Your Honor, for all those reasons, we respectfully request reversal. Thank you. Thank you. Thank you both for your argument. The case will be submitted.